IN THE UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF TEXAS
DALLAS DIVISION

| | | |
|---|---|---|
| JASON KENDALL, | § | |
| | § | |
| Plaintiff, | § | |
| | § | |
| v. | § | CIVIL ACTION NO. 3:19-CV-0279-E |
| | § | |
| TAYLOR SMITH and | § | |
| THE CITY OF DALLAS, | § | |
| | § | |
| Defendants. | § | |

## MEMORANDUM OPINION AND ORDER

Before the Court is defendant Taylor Smith's Motion for Summary Judgment (Doc. 27). Smith contends he is entitled to summary judgment on plaintiff Jason Kendall's 42 U.S.C. § 1983 excessive force claim because Smith did not violate Kendall's constitutional rights or, alternatively, Smith is entitled to qualified immunity. Having carefully considered the motion, the parties' briefing, the summary judgment evidence, and applicable law, the Court finds the motion should be denied for the following reasons.

### BACKGROUND

On October 13, 2018, Kendall was in Dallas attending a company training program (Doc. 28-2, p. 7). In the evening, he had dinner and then "bar hopped" with several colleagues in the Deep Ellum neighborhood (*Id.*, pp. 10-11). Kendall testified that, over the course of the evening, he drank approximately five beers, but he felt sober and in control (Doc. 28-2, pp. 11-13; Doc. 35, p. 69).

Smith, a City of Dallas police officer, was working off duty, but in full uniform, at a Deep Ellum bar (Doc. 28-2, p. 1). In response to a request by either Smith or another off-duty officer,

Michael Lee, an on-duty City of Dallas police officer, also was in the area to assist with traffic control (*Id*., pp. 1-2, 86).

At closing time, between 2:00 and 2:30 a.m. on October 14, Kendall and his colleagues were "hanging out" in front of a bar on Elm Street as they were getting ready to leave (*Id*., pp. 13, 18, 78). Kendall was standing in the street, which he thought was blocked off for safety reasons (*Id*., p. 19). Kendall observed Lee standing behind a nearby patrol car and asked if the streets were closed (*Id*., pp. 21-22). Lee said they were not, and Kendall walked back to the sidewalk (*Id*., pp. 22-23).

Crystal Arce, one of Kendall's colleagues, then walked over to Lee in the street to ask for his phone number (*Id*., p. 26). Some minutes later, Kendall stepped into the street to join their conversation (*Id*., p. 27). Kendall said to Lee, "if I'm not allowed in the street, she can't be in the street" (*Id*.). Lee indicated that Arce was allowed to remain in the street, but Kendall had to return to the sidewalk[1] (*Id*., pp. 27-28). Kendall testified that, in response, he smiled and laughed a little bit, turned around, and headed back to the sidewalk (*Id*., p. 28). When he was back on the sidewalk, Smith "grabbed, like, tackled" [Kendall] into the side of the police cruiser" (*Id*., p. 29). Kendall testified, more specifically, that Smith grabbed Kendall, slammed Kendall on the car, and then placed his forearm at Kendall's throat (*Id*. p. 33). Kendall's "back and waist folded back" onto the car, and Smith was on top of him with his face inches from Kendall's (*Id*., pp. 34-35). Although Kendall was only in that position for "a few moments," the contact re-aggravated a back injury and he suffered "unbearable" pain (*Id*., p. 35; Doc. 35, pp. 72, 74). Nicholas Braker, one of

---

[1] Kendall testified that Lee said "something to the effect that [Arce] could stay in the street, but [Kendall] needed to get the "F" on the sidewalk" (Doc. 28-2, p. 28). Other witnesses testified that Lee simply told Kendall to get back on the sidewalk (*Id*., pp. 65, 79).

Kendall's colleagues, separated the men, and Kendall rejoined his colleagues (Doc. 28-2, pp. 37-38).

Kendall's testimony regarding the amount of force used, where he was at the time, and whether he had complied with Lee's instruction is supported by several witnesses and disputed by others.  In a deposition, Smith denied slamming Kendall against the patrol car (Doc. 35, p. 190).  Instead, he grabbed Kendall and pushed him against the car to get him out of the middle of the street (Doc. 28-2, pp. 123, 126, 128).  Smith also testified that he believed Kendall was disobeying an order, but acknowledged that he had not heard, and did not know, what transpired between Lee and Kendall prior to using physical force (Doc. 35, pp. 154, 159).  At the time, Smith's focus was split between observing Lee and assisting an unconscious, intoxicated woman (*Id.*, p. 159).  Indeed, Smith had not noticed that Arce also was in the street with Lee (*Id.*, p. 155).  Smith described his conduct as "a small detention to let [Kendall] go with his friends and pretty much tell him to stay out of the street while [Lee] was directing traffic" (Doc. 28-2, p. 124).

In a subsequent declaration,[2] Smith recounted observing Kendall walk into Elm Street toward Lee (Doc. 28-2, p. 2).  Although Smith could not hear Lee, Lee made hand motions, which

---

[2]  Kendall objects to several statements in Smith's declaration as stating "improper legal conclusions, speculation and conjecture on ultimate issues without aiding the trier of fact to determine a fact in issue."  The Court agrees that the following statements constitute impermissible legal conclusions; accordingly, Kendall's objections are **SUSTAINED** and the statements are **STRICKEN**:

(1) "I believe that my decisions and action were consistent with state and federal law.";

(2) "I believe my actions on the date and time in question were reasonable, proper, and necessary to perform my duties";

(3) "I did not violate clearly established law of which a reasonable person would have known."; and

(4) "I never used force excessive to the need upon Mr. Kendall."

*See* FED. RS. EVID. 701, 704(a); *McBroom v. Payne*, 478 F. App'x 196, 200 (5th Cir. 2012) (finding no abuse of discretion in trial court's refusal to allow plaintiff's expert witness to testify that defendant officer used excessive force); *United States v. Williams*, 343 F.3d 423, 435 (5th Cir. 2003) (reasonableness under Fourth Amendment is a

3

Smith interpreted to be directing Kendall to the sidewalk (*Id.*).   Kendall then walked back to the sidewalk with an unsteady balance (*Id.*).   Later, Kendall re-entered the street and walked toward Lee (*Id.*).   Smith was concerned for Kendall's safety because the street was open to vehicular traffic (*Id.*).   Kendall laughed in Lee's direction and did not appear to take Lee's commands seriously (*Id.*).   Smith did not know if Kendall was going to comply with Lee's direction, and Smith determined "it was appropriate to employ hand control to gain Mr. Kendall's compliance to remove him from the street and to restrain his movements while [Smith] cautioned him about his actions" (*Id.*).   In doing so, he relied on his knowledge and training regarding a Dallas Police Department general order on response continuum, which authorized use of force to "influence or neutralize a non-compliant subject" (*Id.*).

According to his declaration, Smith approached Kendall rapidly from behind, grabbed his right upper arm, and took his left forearm/wrist and "escorted" him about six to seven steps to the sidewalk area next to the patrol car and pushed Kendall's body against a car door to gain physical control (*Id.*).   Kendall's breath smelled of alcohol (*Id.*).   Smith told Kendall to stay out of the street and that Kendall could possibly be arrested for public intoxication (*Id.*, pp. 2-3).   He then released Kendall to another person (*Id.*).   Kendall's conduct met the elements of public intoxication, obstructing the roadway, and a pedestrian walking in the roadway when an adjacent sidewalk was provided (*Id.*, p. 3).

Lee testified that he was speaking with Arce when he heard Kendall speaking "loud gibberish" (Doc. 28-2, p. 89).   Lee told Kendall to get on the sidewalk, but Kendall remained in

---

legal conclusion); *Waller v. City of Fort Worth, Tex.*, No. 4:15-CV-670-Y, 2018 WL 1757779, at *16 (N.D. Tex. Apr. 12, 2018) (reasonableness under a qualified-immunity analysis is a question of law not fact, and opinion testimony that officer did not act as any other reasonable police detective in investigating officer-involved shooting was impermissible legal conclusion).

the street, making "random comments" (*Id.*, p. 91).  Because Kendall continued to talk and was

not making sense, Lee thought Kendall was intoxicated (*Id.*, pp. 90-91). Lee and Kendall had "a

back and forth exchange" in which Lee told Kendall to move to the sidewalk several times (*Id.*,

pp. 90-93).  Kendall, however, had moved back to the curb when Smith came up behind Kendall,

placed his hand on Kendall's back, and "pushed" and "pressed" Kendall against the car (*Id.*, p. 93-

94).  According to Lee, Smith did not "escort" Kendall to the car because Kendall was already

next to the car (*Id.*).  Lee described Smith's conduct as a technique that officers use to keep a

person from fleeing, falling, or fighting (*Id.*, pp. 95-96).  Other than appearing intoxicated, Kendall

did nothing that caused Lee to think he would flee or fight (*Id.*, p. 96).  Lee told Smith to release

Kendall to his friends (*Id.*, p. 99).

Arce testified that she remembered Kendall getting out of the street when he was told to[3]

and, when he was back on the curb of the sidewalk, Smith grabbed him and pushed or "knocked"

Kendall into the car aggressively (Doc. 35, pp. 350, 353, 356, 371).  Arce described the situation

as "escalated for no reason" (*Id.*, p. 372).  Braker likewise testified that Kendall had walked over

to the side of the street before Smith "just ran at him and tackled him onto this car" (Doc. 28-2,

pp. 64-65).  It was very surprising to Braker because the conversation between Kendall and Lee

was not "serious" or "escalated" and Smith had not been part of the conversation (*Id.*, pp. 65, 73).

According to Braker, Kendall was speaking conversationally with "coherent sentences" and was

neither a threat nor a danger (Doc. 35, pp. 393, 397, 405, 416).  Another of Kendall's colleagues,

Robert Fegel, testified that Kendall "totally cooperated" with Lee's instructions, and Smith "came

out of nowhere," grabbing Kendall and throwing him against the car like he was an imminent

---

[3]  Arce testified that Smith, and not Lee, told Kendall to get out of the street, although she submitted a Dallas Police
Department complaint after the incident in which she wrote that Lee had asked Kendall to get out of the street (Doc.
28-2, p. 57; Doc. 35, p. 348).

threat (*Id*., pp. 291-92, 324, 326).  Fegel also testified that Kendall was not an aggressive guy and was not unsteady, "incoherent or being any type of threat to anybody" (*Id*., pp. 287, 303).

Kendall brings this lawsuit against Smith under section 1983, alleging Smith used excessive force during their encounter in deprivation of Kendall's rights under the Fourth Amendment.

**LEGAL STANDARD**

Summary judgment is appropriate if, viewing the evidence in the light most favorable to the nonmoving party, "the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law."  FED. R. CIV. P. 56(a).   "A fact is material if it might affect the outcome of the suit," and "[a] factual dispute is genuine if the evidence is such that a reasonable jury could return a verdict for the nonmoving party."  *Thomas v. Tregre*, 913 F.3d 458, 462 (5th Cir. 2019) (quoting *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986) (internal quotation marks omitted)).  A court must "resolve factual controversies in favor of the nonmoving party, but only where there is an actual controversy, that is, when both parties have submitted evidence of contradictory facts."  *Antoine v. First Student, Inc.*, 713 F.3d 824, 830 (5th Cir. 2013) (citation omitted).  A "nonmoving party cannot defeat summary judgment with conclusory allegations, unsubstantiated assertions, or only a scintilla of evidence."  *Hathaway v. Bazany*, 507 F.3d 312, 319 (5th Cir. 2007) (internal question marks and citations omitted).

"Qualified immunity attaches when an official's conduct 'does not violate clearly established statutory or constitutional rights of which a reasonable person would have known.'"  *White v. Pauly*, 137 S. Ct. 548, 551 (2017) (per curiam) (quoting *Mullenix v. Luna*, 57 U.S. 7, 11 (2015) (per curiam)).  Courts apply a two-step inquiry to determine whether qualified immunity applies.  *Garcia v. Blevins*, 957 F.3d 596, 600 (5th Cir. 2020).   First, a court must consider

"whether the facts alleged, viewed 'in the light most favorable to the party asserting the injury,' establish that 'the officer's conduct violated a constitutional right.'" *Id.* (quoting *Valderas v. City of Lubbock*, 937 F.3d 384, 389 (5th Cir. 2019)).  Next, the court considers "whether the right was clearly established." *Id.*  The court may decide the order in which it elects to address these inquiries. *Pearson v. Callahan*, 555 U.S. 223, 236 (2009).

"A good-faith assertion of qualified immunity alters the usual summary judgment burden of proof, shifting it to the plaintiff to show that the defense is not available*." Garcia*, 957 F.3d at 596 (citations omitted).  Although the court draws all factual inferences in favor of the nonmovant, the plaintiff bears the burden to show the qualified immunity defense is unavailable. *See Kovacic v. Villareal*, 628 F.3d 209, 211 (5th Cir. 2010).  "Thus, to avoid summary judgment, [a plaintiff] must point out a genuine dispute of material fact as to whether [the defendant's] allegedly wrongful conduct violated clearly established law." *Garcia*, 957 F.3d at 600 (quoting *McCoy v. Alamu*, 950 F.3d 226, 230 (5th Cir. 2020)).

## ANALYSIS

### 1.    *Violation of a Constitutional Right*

Smith first contends he is entitled to summary judgment because the force he used was reasonable and did not deprive Kendall of a constitutional right.  The Fourth Amendment protects an individual from excessive force. *See Graham v. Connor*, 490 U.S. 386, 394 (1989).  When seizing an individual for law enforcement purposes, police officers may use objectively reasonable force "in light of the facts and circumstances confronting them, without regard to [the officers'] underlying intent or motivation." *Id.* at 397.  To establish an excessive force claim, a plaintiff must demonstrate "(1) an injury, (2) which resulted from the use of force that was clearly excessive, and (3) the excessiveness of which was clearly unreasonable." *Griggs v. Brewer,* 841

F.3d 308, 312 (5th Cir. 2016) (citing *Graham*, 490 U.S. at 396).  Here, there is evidence, and Smith does not dispute, that Kendall suffered injuries to his back as a result of Smith's use of force.

To determine whether the use of force was clearly excessive and clearly unreasonable, a court must consider the "totality of the circumstances," including the following *Graham* factors: (1) severity of the crime at issue; (2) whether the plaintiff posed an immediate threat to the safety of the officers or others; and (3) whether the plaintiff was actively resisting arrest or attempting to evade arrest by flight.  *Darden v. City of Fort Worth, Tex.*, 880 F.3d 723, 728 (5th Cir. 2013).  The court may not second-guess the officer's conduct in hindsight.  *Id*.  Further, the court must consider that officers often need to make split-second decisions in stressful situations.  *Id*. at 729.

Considering the summary judgment evidence under the *Graham* factors, the Court finds a jury could reasonably conclude the force used constituted a violation of Kendall's constitutional rights.  With respect to the severity of the crime at issue, Smith testified to using force to get Kendall, who did not appear to be following Lee's direction, out of the street.  Smith asserts Kendall's conduct met the elements of public intoxication,[4] obstructing the roadway, and a pedestrian walking in the roadway when an adjacent sidewalk was provided – each a minor offense (Doc. 28-2, p. 3).  When a suspect is detained for a minor offense, the need for force is "substantially lower than if she had been suspected of a serious crime."  *Deville v. Marcantel*, 567 F.3d 156, 167 (5th Cir. 2009); *see also Reyes v. Bridgwater*, 362 F. App'x 403, 407 n.5 (5th Cir. 2010).  Here, because Smith's use of force was simply to effect "a small detention to let [Kendall] go with his friends and pretty much tell him to stay out of the street" (Doc. 35, p. 123), the Court finds the first *Graham* factor weighs against Smith.

---

[4]  Smith, however, acknowledged that he did not know if Kendall was intoxicated before using physical force against Kendall (Doc. 35, p. 51).

The second *Graham* factor—whether Kendall posed a threat to the officers or others—also weighs against Smith. All of the witnesses, including Smith, acknowledged that Kendall was not exhibiting any threatening behavior. And, Smith specifically testified that Kendall was not a danger or threat to either Smith or Lee (Doc. 35, p. 222). Although it is possible that Kendall may have placed himself in danger by standing in the street, there is summary judgment evidence that Kendall was not a danger to himself and, in any event, he had already returned to the sidewalk before Smith made contact. Viewing the evidence in the light most favorable to Kendall, the Court finds he did not pose any threat. *See also Hanks v. Rogers*, 853 F.3d 738, 746 (5th Cir. 2017) (no reasonable officer would have perceived an "immediate threat warranting a physical takedown" of a non-violent, non-fleeing suspect who "merely failed to comply with verbal instructions"); *Ramirez v. Martinez*, 716 F.3d 369, 378 (5th Cir. 2013) (no reasonable officer could have concluded that the plaintiff posed a safety threat simply by questioning the officers' commands, failing to comply with verbal orders, and pulling away from an officer's grasp).

The final *Graham* factor—whether Kendall actively resisted arrest or attempted to flee—also weighs against Smith. Smith testified that Kendall was neither fighting nor resisting Smith at the time of the use of force (Doc. 35, p. 143). To the extent Lee may have had to tell Kendall to return to the sidewalk several times, Kendall's delay in doing so, at most, was passive noncompliance, and use of force is not justified if "an individual's conduct amounts to mere 'passive resistance.'" *Trammell v. Fruge*, 868 F.3d 332, 341 (5th Cir. 2017) (citing *Hanks*, 853 F.3d at 746). And, again, all of the witnesses except Smith testified that Kendall in fact had returned to the sidewalk, and thus complied with Lee's command, before Smith physically forced Kendall into the patrol car. Under these facts, a reasonable jury could find that Kendall did not actively resist or attempt to flee prior to the takedown.

Altogether, the *Graham* factors weigh against Smith at this time.  Construing the evidence in Kendall's favor, while considering the totality of the circumstances, including the force Smith applied in taking Kendall down, and viewing them as a reasonable officer would have, the Court finds a reasonable jury could determine that Smith's use of force was clearly excessive and objectively unreasonable.  Accordingly, there are fact questions precluding summary judgment on the question of whether Smith violated Kendall's constitutional rights by use of force.

2.      *Clearly Established Law*

Smith next contends that, even if his use of force violated Kendall's constitutional rights under the Fourth Amendment, Smith is entitled to summary judgment on his qualified immunity defense.  Specifically, Smith is entitled to qualified immunity because the allegedly violated constitutional rights were not clearly established at the time and Smith's conduct was not objectively unreasonable in light of the then clearly established law.

A clearly established right is one that is "sufficiently clear that every reasonable official would have understood that what he is doing violates that right." *Mullenix*, 577 U.S. at 11 (quoting *Reichle v. Howards*, 566 U.S. 658, 664 (2012)).  "[T]he focus is on whether the officer had fair notice that [the officer's] conduct was unlawful" at the time of the conduct.  *Kisela v. Hughes*, 138 S. Ct. 1148, 1152 (2018).  "[S]pecificity is especially important in the Fourth Amendment context."  *Id*.  "Use of excessive force is an area of the law in which the result depends very much on the facts of each case, and thus police officers are entitled to qualified immunity unless existing precedent squarely governs the specific facts at issue."  *Id*. at 1153 (quoting *Mullenix*, 136 S. Ct. at 309 (internal quotation marks omitted)).  There need not be "a case directly on point[, but] existing precedent must have placed the statutory or constitutional question beyond debate."  *Mullenix*, 577 U.S. at 12 (quoting *Ashcroft v. al-Kidd*, 563 U.S. 731, 741 (2011)).  "The precedent

10

must be clear enough that every reasonable official would interpret it to establish the particular rule the plaintiff seeks to apply." *District of Columbia v. Wesby,* 138 S. Ct. 577, 590 (2018).

Fifth Circuit case law makes clear that, "when an arrestee is not actively resisting arrest the degree of force an officer can employ is reduced." *Darden*, 880 F.3d at 731 (citing earlier cases holding constitutional violations occur "when an officer tases, strikes, or violently slams an arrestee who is not actively resisting arrest"). Specifically, by 2016, clearly established law demonstrated that an officer "violates the Fourth Amendment if he abruptly resorts to overwhelming physical force rather than continuing verbal negotiations with an individual who poses no immediate threat or flight risk, who engages in, at most, passive resistance, and whom the officer stopped for a minor traffic violation." *Hanks*, 853 F.3d at 747; *Deville*, 567 F.3d at 167–69 (denying qualified immunity where officers making minor traffic stop pulled plaintiff out of, and threw her up against, car when she passively resisted commands and presented no safety threat or flight risk); *Bush v. Strain*, 513 F.3d 492, 502 (5th Cir. 2008) (concluding it was objectively unreasonable to slam arrestee's face into vehicle when arrestee was not resisting arrest or attempting to flee).

Here, there is summary judgment evidence that Kendall, although perhaps slowly, had complied with Lee's command. Smith then charged Kendall from behind, tackling him into the patrol car, without first attempting to speak with either Kendall or Lee. Indeed, Smith testified that, had he "slammed" Kendall against the car, that would have been "100 percent too excessive." (Doc. 35, pp. 189-90). And, although Smith relies on the Dallas Police Department general order on response continuum, the order specifically provides that "in all situations, officers will use only that force necessary to control the situation" (Doc. 28-2, pp. 130-44).

11

The Court finds Fifth Circuit cases support the conclusion that Smith was on notice that his conduct in tacking Kendall, who posed no immediate threat or flight risk and engaged in, at most, passive resistance, is a constitutional violation.  Accordingly, Smith is not entitled to qualified immunity at this stage in the litigation, and summary judgment on Kendall's claim against him is unwarranted.  *See, e.g., Garcia v. City of Buda*, 2018 WL 6682419 at *3, 5 (W.D. Tex. Dec. 19, 2018) (officer that tackled plaintiff from behind, drove him into the couch, and pinned his arms to his sides, was on notice that using force on a non-violent, non-fleeing plaintiff who demonstrated merely passive resistance was objectively unreasonable).

In sum, Kendall has met his burden of providing competent summary judgment evidence sufficient to create a genuine issue of material fact regarding Smith's use of force.  Viewing all the facts in a light most favorable to Kendall as the Court must, Kendall also has established that Smith acted unreasonably and unconstitutionally in light of clearly established law. The Court therefore finds that Smith is not entitled to summary judgment on the issue of qualified immunity.

## CONCLUSION

For the reasons given above, **IT IS ORDERED** that Defendants' Motion for Summary Judgment (Doc. 27) is **DENIED**.

SO **ORDERED**; signed November 19, 2020.

ADA BROWN
UNITED STATES DISTRICT JUDGE

12